Eastern District of Kentucky
FILED

NOV 28 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

CRIMINAL ACTION NO. 06-28-KKC

UNITED STATES OF AMERICA,                                                  PLAINTIFF

V.                              **PROPOSED FINDINGS OF FACT**
                                   **AND RECOMMENDATION**

JOSEPH EDELSTEIN and
THOMAS B. BOND,                                                  DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On August 3, 2006, a federal grand jury returned a one-count indictment against defendants Joseph Edelstein and Thomas B. Bond charging that on or about between August 3, 2001 and December 31, 2005, defendants, aided and abetted by each other, knowingly sold prescription drug samples, all in violation of 21 U.S.C. §§ 331(t), 353(c)(1), and 333(b)(1)(B), and 18 U.S.C. § 2.

Defendants pled not guilty to the foregoing charge, and this matter is presently scheduled for a pretrial conference on December 14, 2006, and a jury trial on January 8, 2007.

On September 25, 2006, defendants moved to suppress all evidence seized from the warrantless search of Holland Pharmacy on January 6, 2006, and to suppress all computer print-outs that were subsequently produced at a later time by defendant Edelstein to state officials on the grounds that the search and seizure of evidence from the pharmacy on January 6, 2006, was unlawful, being in violation of the Fourth Amendment to the United States Constitution, and that all evidence subsequently obtained should also be suppressed because it is the "fruit of the poisonous tree." [DE ##30, 31]. Defendants also moved to suppress any statements they made to the investigating agents on the grounds that these statements were obtained in violation of the defendants' Fifth Amendment right against self-incrimination and also in violation of *Mapp v. Ohio*, 367 U.S. 643, 654 (1961), and *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). [DE ##28, 29].

In responding to defendants' motions to suppress, the United States submits that said motions to suppress should be denied because defendant Edelstein consented to the search of the pharmacy on January 6, 2006, that the pharmacy records subsequently produced were voluntarily provided to state officials and that regardless of any consent given, the state officials had authority to obtain these pharmacy records. The United States opposes the defendants' motions to suppress statements, arguing that the statements were given voluntarily and were not the result of an illegal police activity. The United States advises that no *Miranda*[1] warnings were given because the defendants were not "in custody" during the interviews. [DE #42].

Pursuant to standing order, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b), for hearing on certain pre-trial motions, including defendants' motions to suppress evidence and statements. The motion hearing in this case was held on October 4, 2006. [DE #47]. The United States was represented by Assistant United States Attorney David P. Grise. Defendants were present in person and both were represented by Edward Airhart. This suppression hearing was transcribed in part by Teresa Lemaster, contract court reporter, and in part by Peggy Weber, Official Court Reporter.

At the suppression hearing, the Magistrate Judge heard testimony from Paula York, Kevin Bereda, and defendant Joseph Edelstein. These witnesses were questioned by counsel for the United States and by defendants' counsel.

Subsequent to the suppression hearing, the United States filed a post-hearing memorandum in further support of its opposition to defendants' motions to suppress [DE #50]. Defendants have filed no response to the post-hearing memorandum filed by the United States, and the time for responding thereto has expired. Thus, this matter is ripe for review and has been submitted for a Report and Recommendation to the district court on defendants' motions to suppress.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. FACTUAL BACKGROUND

In November of 2005, the Kentucky Board of Medical Licensure ("KBML") received a letter from a patient of Dr. Ronald Koff, a physician in New Castle, Kentucky, reporting that Dr. Koff was providing pharmaceutical drug samples to Holland Pharmacy in New Castle, Kentucky, and that these drug samples were being sold by Holland Pharmacy to Dr. Koff's patients. Since the KBML has no authority or jurisdiction over pharmacists, it referred this complaint letter to the Drug Enforcement and Professional Practices Branch of the Office of Inspector General, Kentucky Cabinet for Health and Family Services. Additionally, in late 2005, an anonymous letter was sent to the Kentucky Board of Pharmacy alleging that Holland Pharmacy was selling sample drugs.

As the result of the complaint referral from the KBML and the anonymous letter sent to the Kentucky Board of Pharmacy concerning allegations that Holland Pharmacy was selling sample drugs, Paula York, a licensed pharmacist employed by the Office of the Inspector General, Drug Enforcement and Professional Practices Branch of the Kentucky Cabinet for Health and Family Services, and Jeffrey Osman, Coordinator of Pharmacy Inspections and Investigations for the Kentucky Board of Pharmacy, investigated this matter.

On January 6, 2006, Paula York and Jeffrey Osman traveled to New Castle, Kentucky, and appeared at Holland Pharmacy to inquire about the possible sale of sample drugs.[2] Upon entering the pharmacy, they observed that Joseph Edelstein, the owner and operator of the pharmacy, was working at the pharmacy that day.[3] They asked Edelstein if they could speak to him in private, and he led them into his office area, roughly a 4' by 9' space off to the side of the filling area of the

---

[2] A student pharmacist identified only as "Matt," who was doing a rotation for the Pharmacy Board, also accompanied York and Osman to Holland Pharmacy on January 6, 2006. (Tr. Hearing, Vol. I, pp. 22-23).

[3] Defendant Thomas S. Bond works part-time as the relief pharmacist at Holland Pharmacy; however, he was not on duty on that day.

3

pharmacy. Osman advised Edelstein that they were not there for a routine inspection[4] and that they were there to investigate an allegation that the pharmacy was selling sample drugs. Edelstein denied the allegation. Osman then asked Edelstein if they "could search around the pharmacy," (Suppression Hearing, Vol. I, p. 26), and Edelstein consented to Osman's request. *Id.* Edelstein then went back to work filling prescriptions and attending to the pharmacy's business.

York searched the office area, where they had spoken to Edelstein, and Osman inspected the basement. York testified that in Edelstein's office, she observed in plain view "empty packages in the trash can" which, based on her experience as a pharmacist and inspector, she recognized to be sample drug packages, a conclusion she made just by looking at the packaging. (Suppression Hearing, Vol. I, pp. 26-27). York seized that packaging from the trash can. York also found sample drugs on the shelves and in the cabinets and file drawers in Edelstein's office. Elaborating, York stated that they found numerous sample drugs; some were in the original sample packaging, and some had been "punched out" of the blister packs and/or the original small plastic bottles and poured into stock bottles.[5] York stated that she observed stock bottles where the original labeling had been "stripped off the bottle" and that there were markings on these bottles with a magic marker. (Suppression Hearing, Vol. I, p. 30). York stated that she observed stock bottles which contained the wrong drug with a different lot date or a different expiration date and that such stock bottles were considered to contain misbranded and adulterated drugs that were subject to seizure. *Id.* In the

---

[4] Periodically, usually every six months to a year, the Kentucky Board of Pharmacy routinely inspects pharmacies to determine if they are in compliance with state regulations. In a routine inspection, drugs on the shelves are checked to ensure they are not outdated, and the inspector reviews the pharmacy's computer records and journals to determine if the pharmacy is compliant with state regulations. (Suppression Hearing, Vol. II, p. 25).

[5] A "stock bottle" is a large, deep plastic container ("approximately, a quart size plastic bottle" (Suppression Hearing, Vol. I, p. 30) in which some prescription medications are packaged by the manufacturer.

4

basement where Osman searched, he found and seized numerous packages of sample drugs that were still in their original sample packaging. (Suppression Hearing, Vol. I, p. 29).[6]

They also seized drugs they observed in overfilled stock bottles found on the main drug shelves that were in the filling area of the pharmacy. These overfilled bottles were seized because these stock bottles would not have been filled to that capacity by the manufacturer; thus, these stock bottles had been altered and were considered to be adulterated and/or misbranded. (Suppression Hearing, Vol. I, p. 34).

After they had seized the sample drug evidence, Osman and York asked Edelstein if they could speak to him again, and he agreed to talk to them. (Suppression Hearing, Vol. I, pp. 30-31). Their interview with Edelstein occurred in his office with the door open, lasted approximately 25 minutes, and was interrupted periodically while Edelstein left the office to wait on customers, take telephone calls, and otherwise attend to the pharmacy's business. (Suppression Hearing, Vol. I, pp. 31-34). During this interview, Edelstein admitted that he was in possession of and had been selling sample drugs. (Suppression Hearing, Vol. I, p. 31). However, Edelstein was never advised that he was under arrest, and he never asked to leave the interview. After their interview with Edelstein had concluded, Osman and York loaded up all of the sample drugs they had seized and left the pharmacy during normal business hours. (Suppression Hearing, Vol. I, p. 35).

Subsequently, Osman and York contacted the Food and Drug Administration ("FDA") and spoke with Kevin Bereda, a criminal investigator with the FDA who has been employed by the FDA for more than twenty (20) years, concerning the results of their investigation of the allegation that Holland Pharmacy was selling sample drugs. Four days later, on January 10, 2006, Osman and York made a return trip to Holland Pharmacy. This time they were accompanied by FDA Agent Kevin

---

[6] While York inspected Edelstein's office and Osman inspected the basement, Matt, the pharmacy student who had accompanied them to the pharmacy that day, inspected the drugs that were on the shelves in the pharmacy's filling area.

5

Bereda. At the time of their arrival at Holland Pharmacy, Thomas Bond ("Bond"), the relief pharmacist, was the pharmacist on duty; Edelstein was not there at that time.

They asked Bond if they could talk to him, and he consented to do so. (Suppression Hearing, Vol. I, p. 37). They spoke with Bond in an area directly behind the stock shelves in the pharmacy filling area; there was a little curtain there to somewhat block the public view. Agent Bereda conducted the interview with Bond, who was not detained in any way and left the interview intermittently to go wait on customers. (Suppression Hearing, Vol. I, p. 40). During the course of the interview, which lasted about forty-five (45) minutes, Bond admitted to selling sample drugs. At the conclusion of the interview, Bond went back to his job filling prescriptions and waiting on customers. (Suppression Hearing, Vol. I, p. 41).

Osman, York, and Agent Bereda then left the pharmacy, took a break for lunch, and came back to the pharmacy on the afternoon of January 10. Edelstein was the pharmacist on duty at that time; Bond only worked in the morning that day. They asked Edelstein if they could talk to him, and he agreed to do so. They spoke with Edelstein in the same area directly behind the stock shelves in the pharmacy filling area where they had talked to Bond. Agent Bereda conducted the interview with Edelstein, who was not detained in any way and left the interview intermittently to go wait on customers, take telephone calls, check on prescriptions, etc. (Suppression Hearing, Vol. I, p. 43). During the course of the interview, which lasted about forty-five (45) minutes, Edelstein again admitted to selling sample drugs. At the conclusion of his interview with Agent Bereda, Edelstein returned to his job filling prescriptions and waiting on customers.

Before York, Osman, and Agent Bereda left the pharmacy that day, York and Osman also talked to Edelstein about certain patient/pharmacy records. Specifically, they requested records showing what medications the following individuals had received from the pharmacy: the pharmacy's employees and their family members, Dr. Ron Koff and his family members, and the employees of Dr. Ron Koff. (Suppression Hearing, Vol. I, p. 44). Edelstein did not object to this request, and he instructed the pharmacy technician, Darren Owens, to print this information from the

6

pharmacy's computer system. *Id.* Those records were produced to York and Osman that day before they left the pharmacy. *Id.*

Subsequently, in a follow-up letter to Edelstein, Osman and York requested Edelstein to provide them with additional records, such as drug usage reports on certain drugs and purchase reports identifying the wholesalers from which Holland Pharmacy purchased drugs. Edelstein complied with that request by mailing those records to the Kentucky Board of Pharmacy. (Suppression Hearing, Vol. I, pp. 45-46).

### III. DEFENDANTS' MOTIONS TO SUPPRESS

To reiterate, defendants' motion to suppress concerns (1) the sample drugs seized from the pharmacy on January 6, 2006, (2) the statements made by Edelstein to Osman and York on January 6, 2006, and the statements made by Edelstein and Bond to FDA Agent Kevin Bereda on January 10, 2006, and (3) the pharmacy records produced by Edelstein on January 10, 2006, and those records Edelstein subsequently mailed to the Kentucky Board of Pharmacy in response to a letter Osman and York sent to Edelstein after their visit to Holland Pharmacy on January 10, 2006.

**A.      The sample drugs seized from the pharmacy on January 6, 2006**

Initially, defendant Edelstein moved to suppress the sample drugs seized from the pharmacy on January 6, 2006 [DE #31], and defendant Bond subsequently joined in or adopted Edelstein's motion to suppress this evidence [DE #34]. However, at the suppression hearing on October 4, 2006, counsel for defendant Bond conceded that since Bond has no ownership interest in Holland Pharmacy and is simply employed there as the relief pharmacist, Bond has no standing to contest the search of the pharmacy and/or the seizure of the sample drugs therefrom on January 6, 2006. [Suppression Hearing, Vol. II, p. 51]. Thus, this analysis is confined to defendant Edelstein.

Edelstein first argues that the sample drugs seized from the pharmacy on January 6, 2006, should be suppressed because he gave no written consent to the search of the pharmacy by Osman and York that day and that the items seized were not in "plain view." Edelstein also asserts that while Osman and York had authority to investigate and search the area of the pharmacy where

prescriptions were filled, the scope of their authority was confined to the pharmacy filling area and that they exceeded the scope of their authority by searching in his office (a room adjacent to and on the side of the pharmacy filling area) and in the basement. Therefore, the evidence seized from these two areas (his office and the basement) should be suppressed.

**1.    Warrantless search**

Although the search of Holland Pharmacy on January 6, 2006, was a warrantless search, Edelstein's argument ignores the fact that he consented to the search. Since Edelstein is the owner and operator of Holland Pharmacy, he had authority to consent to the search of a business that he owned and managed. *See Schnecklothe v. Bustamonte*, 412 U.S. 218, 219 (1973). Concerning Edelstein's "written consent" argument, Edelstein has provided the court with no authority to support his argument that "written consent" was required to legitimize the search, and the court is unaware of any authority requiring consent to be in writing. It is undisputed that during the course of Edelstein's initial interview with Osman and York, which was conducted in his office, a place where he led Osman and York and the place where he chose to be interviewed, Edelstein gave his verbal consent to the search. Quite simply, written consent is not required; verbal consent is sufficient. Thus, Edelstein's lack of "written consent" argument is without merit.

Edelstein appears to argue that he subjectively believed, based on prior inspections, that York and Osman's search would be confined to the filling area of the pharmacy and that no one would inspect the pharmacy office or the pharmacy basement. (Suppression Hearing, Vol. I, p. 11). Based on this subjective belief, Edelstein asserts that Osman and York exceeded the scope of their authority to search by searching in his office and in the basement of the pharmacy. However, Edelstein's unspoken misunderstanding concerning the areas of the pharmacy to be searched is not controlling. *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997) (scope of consent search determined based on the "objective reasonableness" of the law enforcement officer); *United States v. Hurst*, 228 F.3d 751, 758 n. 3 (6th Cir. 2000). Consequently, the Magistrate Judge is unpersuaded by Edelstein's argument that Osman and York exceeded the scope of the consensual search on January 6, 2006.

### 2. Plain view

Edelstein also asserts that the drug samples seized should be suppressed because they were not in plain view.

Edelstein's "plain view" argument is refuted by the testimony of Paula York, who searched Edelstein's office, the place where Edelstein chose to talk to York and Osman. York testified that while in Edelstein's office, she observed in plain view "empty packages in the trash can" which, based on her experience as a pharmacist and inspector, she recognized to be sample drug packages, a conclusion she made just by looking at the packaging. (Suppression Hearing, Vol. I, pp. 26-27). York seized that packaging from the trash can. York also found sample drugs on the shelves and in the cabinets and file drawers in Edelstein's office.

The fact that York observed sample drug packaging in plain view in the trash can in Edelstein's office established probable cause to search in other areas of the pharmacy for further evidence of sample drugs, such as in the file drawers and cabinets in Edelstein's office and in the basement area of the pharmacy.

Nevertheless, even if Edelstein had not consented to the search and even if York had not observed sample drug packaging in plain view in the trash can in Edelstein's office, the Kentucky Board of Pharmacy is authorized by Kentucky Revised Statute ("KRS") 315.220(b) to inspect licensed pharmacies at any reasonable time for the purpose of conducting investigations. Furthermore, the Board of Pharmacy is required to investigate complaints it receives. 201 KAR 2:061, Section. KRS 315.220(b) empowers the Board of Pharmacy to require the production of evidence and to seize evidence from licensed pharmacies. Additionally, KRS 217.155 gives the Cabinet for Health and Family Services (hereafter "Cabinet") "free access" to establishments selling prescription drugs. The Board of Pharmacy and the Cabinet have co-extensive authority when the matter involves a licensed pharmacy. See KRS 217.215(1). Both state agencies may enforce the prohibition on improper possession of prescription drugs and the misbranding of prescription drugs. See KRS 217.1775 and 217.182. Neither a search warrant nor consent is necessary for the exercise

9

of this statutory authority. State administrative searches of pervasively regulated industries, such as pharmacies, are valid when limited in scope to the regulated activity. Evidence of criminal activity uncovered during the course of these administrative searches may be used in criminal prosecutions. *United States v. Branson*, 21 F.3d 113 (6th Cir. 1994).

In this case, the search was conducted during normal business hours and was limited in scope to the regulated activity. Thus, even if Edelstein had not given his consent to the search and even if there had been no evidence of sample drugs in plain view, the Magistrate Judge concludes that the search was lawful, as the Board of Pharmacy has the statutory authority, not only to investigate complaints, but also to inspect a pharmacy to ensure that the pharmacy is not in possession of and/or dispensing misbranded, outdated, recalled, or otherwise improper prescription drugs. Consequently, neither Edelstein's consent, nor sample drug evidence in plain view, nor a search warrant was required to validate this search.

For all of the foregoing reasons, the Magistrate Judge concludes that Edelstein's motion to suppress the prescription drug samples seized from his pharmacy on January 6, 2006, should be denied.

### B. Statements made by Edelstein and Bond

Edelstein has also moved to suppress the statements he made to Osman and York on January 6, 2006, and the statements he made to Bereda on January 10, 2006. Bond has moved to suppress the statements he made to Bereda on January 10, 2006. As grounds for their motions to suppress the foregoing statements, Edelstein and Bond assert that these statements were illegally obtained from them in that they were never advised of their *Miranda* rights prior to making these statements.

As pointed out by the United States, *Miranda* warnings are required only when a defendant is "in custody" at the time the statements are made. One is "in custody" when there has been a formal arrest or when there is an equivalent restraint on one's freedom of movement. The situation is reviewed objectively, rather than through the subjective eyes of the defendant. *Biros v. Bagely*, 422 F.3d 379, 389 (6th Cir. 2005); *United States v. Swanson*, 341 F.3d 524 (6th Cir. 2003).

1. **Joseph Edelstein**

a. **Statements made on January 6, 2006**

On January 6, 2006, Edelstein was interviewed by Osman and York in his office on the day of the search. Upon arriving at the pharmacy, Osman and York asked Edelstein if they could speak to him in private; Edelstein consented to be interviewed and chose to talk to them in his office. (Suppression Hearing, Vol. I, p.25). Since this interview occurred during the pharmacy's normal business hours, Edelstein interrupted the interview periodically and exited his office to wait on customers, fill prescriptions, take telephone calls, and otherwise attend to the pharmacy's business, as he was the only pharmacist on duty at that time. Edelstein did not ask Osman and York if he could leave his office to attend to business, the state agents did not attempt to prevent him from exiting his office during this interview, and the door to his office remained open at all times during this interview. (Suppression Hearing, Vol. I., p. 34, Vol. II,, pp. 34-35).

Based on the foregoing facts, the Magistrate Judge concludes that Edelstein was not "in custody" at any time during his consensual interview with Osman and York on January 6, 2006, in the workplace. This conclusion is based on the fact that Edelstein was never advised that he was under arrest and there was no indication that Edelstein's freedom of movement was restrained in any way. *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999) (consensual workplace interview not custodial). Therefore, no *Miranda* warnings were required, and the statements Edelstein made to Osman and York were not obtained in violation of *Miranda*.

b. **Statements made on January 10, 2006**

Osman and York returned to the pharmacy on January 10, 2006, accompanied by FDA Agent Kevin Bereda, who conducted the interview with Edelstein. This time the interview took place in an area behind the shelves in the prescription-filling area of the pharmacy, the same area where Agent Bereda had interviewed Thomas Bond earlier that day.

Similar to the agents initial interview with Edelstein, since this interview occurred during normal business hours, Edelstein interrupted the interview intermittently to wait on customers, fill

11

prescriptions, take telephone calls, and otherwise attend to the pharmacy's business, as he was the only pharmacist on duty at that time. Edelstein did not ask Agent Bereda for permission to leave the interview temporarily to attend to business, and Agent Bereda did not attempt to prevent him from leaving the interview.

Based on the foregoing facts, the Magistrate Judge concludes that Edelstein was not "in custody" at any time during his consensual interview with Agent Bereda on January 10, 2006, in the workplace. This conclusion is based on the fact that Edelstein was never advised that he was under arrest and there was no indication that Edelstein's freedom of movement was restrained in any way. *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999) (consensual workplace interview not custodial). Therefore, no *Miranda* warnings were required, and the statements Edelstein made to Agent Bereda were not obtained in violation of *Miranda*.

### 2. Thomas Bond

On January 10, 2006, when Osman and York made a follow-up visit to Holland Pharmacy, accompanied by FDA Agent Bereda, Bond was the only pharmacist on duty at that time. They asked Bond if they could talk to him, and he consented to do so. (Suppression Hearing, Vol. I, p. 37). They spoke with Bond in private, in an area directly behind the stock shelves in the pharmacy filling area. Agent Bereda conducted the interview with Bond, who was not detained in any way and left the interview intermittently to go wait on customers. (Suppression Hearing, Vol. I, p. 40). During the course of the interview, which lasted about forty-five (45) minutes, Bond admitted to selling sample drugs. At the conclusion of the interview, Bond went back to his job filling prescriptions and waiting on customers. (Suppression Hearing, Vol. I, p. 41).

Based on the foregoing facts, the Magistrate Judge concludes that Bond was not "in custody" at any time during his consensual interview with Agent Bereda on January 10, 2006, in the workplace. This conclusion is based on the fact that Bond was never advised that he was under arrest and there was no indication that Bond's freedom of movement was restrained in any way. *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999) (consensual workplace interview not custodial).

Therefore, no *Miranda* warnings were required, and the statements Bond made to Agent Bereda were not obtained in violation of *Miranda*.

C.  **Pharmacy records**

At the conclusion of their visit to Holland Pharmacy on January 10, 2006, York and Osman also talked to Edelstein about certain patient/pharmacy records. Specifically, they requested records showing what medications the following individuals had received from the pharmacy: the pharmacy's employees and their family members, Dr. Ron Koff and his family members, and the employees of Dr. Ron Koff. (Suppression Hearing, Vol. I, p. 44). Edelstein did not object to this request, and he instructed the pharmacy technician, Darren Owens, to print this information from the pharmacy's computer system. *Id.* Those records were produced to York and Osman that day before they left the pharmacy. (Suppression Hearing, Vol. I, p. 45).

Subsequently, in a follow-up letter to Edelstein, Osman and York requested Edelstein to provide them with additional records, such as drug usage reports on certain drugs and purchase reports identifying the wholesalers from which Holland Pharmacy purchased drugs. (Suppression Hearing, Vol. I, p. 46). Edelstein complied with that request by mailing those records to the Kentucky Board of Pharmacy. (Suppression Hearing, Vol. I, pp. 45-46).

Defendants have moved to suppress the pharmacy records produced by Edelstein on January 10, 2006, as well as those records Edelstein subsequently mailed to the Kentucky Board of Pharmacy in response to a letter Osman and York sent to Edelstein after their visit to Holland Pharmacy on January 10, 2006, contending that these records were obtained in violation of the Fourth Amendment and should be suppressed because they were illegally obtained and are the "fruit of the poisonous tree." In support of this argument, defendants rely on *Mapp v. Ohio*, 367 U.S. 643, 654 (1961), and *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).[7]

---

[7] Initially, defendant Edelstein moved to suppress "all records obtained from Holland Pharmacy" [DE #30], and defendant Bond subsequently moved to suppress "all evidence seized as the result of the warrantless search and seizure as well as all computer records subsequently
(continued...)

Edelstein's argument ignores the fact that he voluntarily produced all of the pharmacy records at issue, in response to Osman and York's request for those records. Nevertheless, even if Edelstein had not voluntarily produced these pharmacy records, the Magistrate Judge concludes that the production of these records did not violate the Fourth Amendment because both the Cabinet and the Board of Pharmacy are authorized by statute to remove records regarding prescription drugs from any pharmacy. See KRS 217.184. A pharmacist's refusal to provide state authorities access to pharmacy records is a violation of KRS 217.175(6).

Consequently, the Magistrate Judge concludes that Edelstein's motion to suppress all pharmacy records that were provided to state authorities on January 10, 2006, and thereafter, is without merit.

## IV. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED**, as follows:

A. Concerning defendant Joseph Edelstein:

1. That the motion of defendant Joseph Edelstein to suppress all evidence obtained from the warrantless search of Holland Pharmacy on January 6, 2006, [DE #31] be **DENIED**;

2. That the motion of defendant Joseph Edelstein to suppress all statements he made to York and Osman on January 6, 2006, and all statements he made to FDA Agent Kevin Bereda on January 10, 2006 [DE #29] be **DENIED**; and,

3. That the motion of defendant Joseph Edelstein to suppress all pharmacy records obtained from Holland Pharmacy [DE #30] be **DENIED**.

---

(...continued)
obtained from Holland Pharmacy" [DE #34]. However, at the suppression hearing on October 4, 2006, counsel for defendant Bond conceded that since Bond has no ownership interest in Holland Pharmacy and is simply employed there as the relief pharmacist, Bond has no standing to contest the search of the pharmacy and the fruits thereof, such as the seizure of the sample drugs therefrom on January 6, 2006, and Edelstein's production of certain computer records. [Suppression Hearing, Vol. II, p. 51]. Thus, the analysis of the motion to suppress pharmacy records is confined to defendant Edelstein.

B. Concerning defendant Thomas Bond:

1. That the motion of defendant Thomas Bond to suppress all evidence obtained from the warrantless search of Holland Pharmacy on January 6, 2006, [DE #34] be **DENIED** for lack of standing.

2. That the motion of defendant Thomas Bond to suppress all statements he made to FDA Agent Kevin Bereda on January 10, 2006 [DE #28] be **DENIED**; and,

3. That the motion of defendant Thomas Bond to suppress all pharmacy records obtained from Holland Pharmacy [DE #34] be **DENIED** for lack of standing.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties. Any objections to this Proposed Findings of Fact and Recommendation shall be filed within ten (10) days of the date hereof and any response to objections filed shall be filed within five (5) days thereafter. In the absence of any objections filed hereto, a party waives the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 72(b).

This 27th day of November, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

15